IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MONTE BANKS,** | ) | **CIVIL ACTION NO.**   22-1802 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HARVEST HILL BEVERAGE COMPANY,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

# COMPLAINT

## I. PRELIMINARY STATEMENT

Plaintiff, Monte Banks, seeks lost wages and benefits, compensatory and punitive damages, costs, and attorney's fees because Defendant, Harvest Hill Beverage Company, created a hostile work environment for Plaintiff, and forced Plaintiff's constructive discharge due to Plaintiff's race and in retaliation for his protected activity. Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq and 42 U.S.C. § 1981.

## II. JURISDICTION

1. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On September 19, 2022, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant. On September 19, 2022, the EEOC issued a Notice of Right to Sue.[1]

### III.   PARTIES

4. Plaintiff, Monte Banks, is an adult individual who resides at 129 West 10th Avenue, Tarentum, PA 15084. At the time of the incidents complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

5. Defendant, Harvest Hill Beverage Company, is an independent beverage company, located at 1 High Ridge Park, 3rd Fl., Stamford, CT 06905.

### IV.   STATEMENT OF CLAIM

6. In approximately April 2022, Mr. Banks began working for Defendant as an Inventory Accountant.

7. He worked in the truck yard and was responsible for counting items that were stored on the tractor trailers.

8. In late May or early June 2022, "Jimmy" (Race: White) a truck driver for Defendant, approached Mr. Banks (Race: African American) in the truck yard and began verbally threatening him.

9. Jimmy questioned Mr. Banks about his identity and reasons for being in the truck yard, and Jimmy said that he did not trust Mr. Banks.

10. Terrified, Mr. Banks left Jimmy and informed Darcy Day, his direct supervisor, of this harassment.

---

[1] Following the exhaustion of administrative remedies, Plaintiff intends to amend the Complaint to add additional counts under the Pennsylvania Human Relations Act.

11. Ms. Day advised Mr. Banks to immediately go to Defendant's HR department, where he made a complaint about Jimmy.

12. Defendant's HR department said that it would investigate the matter.

13. After leaving Defendant's HR department, Mr. Banks again ran into Jimmy.

14. This time, Jimmy was sitting in a truck and talking about Mr. Banks to two other individuals (Race: White).

15. Upon seeing Mr. Banks, Jimmy began saying things like, "There's that bitch-ass motherfucker right there."

16. To avoid a confrontation, Mr. Banks continued walking until he saw Ms. Day approaching him.

17. Ms. Day looked frightened, and, when Mr. Banks followed her gaze, Mr. Banks saw that Jimmy and the two other men were walking towards him.

18. Ms. Day then urged Mr. Banks to follow her inside the building to get away from Jimmy and the other men.

19. As a result of this latest confrontation, Ms. Day took Mr. Banks to her supervisor, Terry Bower, to make another complaint.

20. Ms. Day reported to Mr. Bower that Jimmy frightened her.

21. Though Mr. Bower indicated that he would handle the situation, Defendant took no action against Jimmy.

22. Instead, an HR employee (name unknown) gave Mr. Banks a bright orange T-shirt to wear every day so that he could be identified as an employee.

23. The HR employee said, "Wearing this orange shirt will tell Jimmy that you are one of us. Everything should be fine now."

24. No other employees were required to wear a bright orange shirt as identification, and Mr. Banks expressed his concerns that he was being treated differently and that wearing the shirt would only serve to draw more attention to himself.

25. Despite his concerns, Mr. Banks wore the shirt as directed.

26. Several coworkers began referring to Mr. Banks as the "stop sign" due to the shirt.

27. After he started wearing the shirt, another incident with Jimmy occurred in the truck yard.

28. As Mr. Banks worked in the truck yard, he heard a truck pull up behind him and turned to see Jimmy was the driver.

29. Jimmy proceeded to follow Mr. Banks, who was on foot, through the truck yard in his vehicle, getting dangerously close to Mr. Banks.

30. Jimmy then maneuvered the truck as if to run Mr. Banks over and then quickly sped past him.

31. Mr. Banks reported this incident to Ms. Day and asked for help.

32. Ms. Day said that HR had not notified her of any further assistance to come.

33. The next incident with Jimmy occurred on June 3, 2022.

34. On that date, Jimmy pulled his truck up close to Mr. Banks, and Mr. Banks could hear loud music coming from the truck.

35. Because Defendant's trucks do not have radios, this meant that Jimmy was using a personal speaker to generate the music.

36. To get Mr. Banks's attention, Jimmy started slapping his hand on the truck's door and singing the lyrics of the song he was playing.

37. The song's lyrics included references to killing Jews, talked about "crazy white boys," and said, "fuck the niggers."

38. This music made Mr. Banks feel unsafe in the workplace, and he submitted a complaint via email to Ms. Day, copying Scott Yancik, Senior Manager for Defendant, on June 3, 2022.

39. In response to Mr. Banks's email, Mr. Yancik wrote the following email to several of Defendant's managers: "FYI, I wanted to forward on the below statement from Monte Banks, who we brought on via an agency to assist Darcy with cycle counts. Below he outlines another negative incident with the same ABC employee from last weeks [*sic*] incident that everyone is aware of. Can this be properly investigated and handled? No one working here should be intimidated or constantly looking over their shoulder."

40. On June 7, 2022, Jimmy again pulled his truck alongside Mr. Banks.

41. After getting Mr. Banks's attention, Jimmy started making confrontational gestures and repeating the phrase "What's up now."

42. In fear for his safety, and with no support from Defendant, Mr. Banks resigned from his position on June 7th.

## V.    CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE VII – RACE DISCRIMINATION

43. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

44. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

45. Plaintiff's constructive discharge occurred as a result of intolerable working conditions created by Defendant due to Plaintiff's race.

46. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT II – VIOLATION OF TITLE VII – RACE DISCRIMINATION

47. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

48. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

49. Defendant's severe and pervasive race discrimination created a hostile work environment for Plaintiff.

50. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT III – VIOLATION OF TITLE VII – RETALIATION

51. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

52. Defendant has intentionally and willfully engaged in a series of unlawful acts in retaliating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

53. Plaintiff's constructive discharge occurred as a result of intolerable working conditions created by Defendant in retaliation for Plaintiff's protected activity.

54. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT IV – VIOLATION OF TITLE VII – RETALIATION

55. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

56. Defendant has intentionally and willfully engaged in a series of unlawful acts in retaliating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

57. Defendant's severe and pervasive retaliatory behavior created a hostile work environment for Plaintiff.

58. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT V – VIOLATION OF § 1981 – RACE DISCRIMINATION

59. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

60. Defendant has intentionally and willfully interfered with Plaintiff's right to make and enforce contracts because of his race, in violation of § 1981.

61. Plaintiff's constructive discharge occurred as a result of intolerable working conditions created by Defendant due to Plaintiff's race.

62. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT VI – VIOLATION OF § 1981 – RACE DISCRIMINATION

63. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

64. Defendant has intentionally and willfully interfered with Plaintiff's right to make and enforce contracts because of his race, in violation of § 1981.

65. Defendant's severe and pervasive race discrimination created a hostile work environment for Plaintiff

66. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## **COUNT VII – VIOLATION OF TITLE VII – RETALIATION**

67. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

68. Defendant has intentionally and willfully interfered with Plaintiff's right to make and enforce contracts because of his race, in violation of § 1981.

69. Plaintiff's constructive discharge occurred as a result of intolerable working conditions created by Defendant in retaliation for Plaintiff's protected activity.

70. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## **COUNT VIII – VIOLATION OF TITLE VII – RETALIATION**

71. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

72. Defendant has intentionally and willfully interfered with Plaintiff's right to make and enforce contracts because of his race, in violation of § 1981.

73. Defendant's severe and pervasive retaliatory behavior created a hostile work environment for Plaintiff.

74. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay, front pay, and lost future earnings, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory and punitive damages;

(e) Award Plaintiff pre- and post-judgment interest;

(f) Award Plaintiff costs and attorney's fees; and

(g) Grant such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

/s/ *Nicholas W. Kennedy*

Nicholas W. Kennedy
PA ID No. 317386

Quatrini Law Group
550 E. Pittsburgh Street
Greensburg, PA 15601